Contracts; employment contract; alleged agreement with CIA for undercover activities. — On June 27, 1980 the court entered the following order:
Before Davis, Judge, Presiding, Kunzig and Bennett, Judges.
The petition of plaintiff A.H. Simrick alleges that, from 1969 through 1976, he entered into a contract with the Government (acting through the Department of State and the Central Intelligence Agency) providing that (a) defendant was to pay plaintiff an initial retainer of $5,000; (b) defendant was to pay plaintiff $20,000 per year as salary; (c) plaintiff was to set up a business in Mauritius to act as a "cover” for agents of the CIA and to provide information; (d) plaintiff was to provide defendant with field offices with identification badges; (e) plaintiff was to provide a meeting place for the CIA in Mauritius; (f) defendant was to buy all the output of plaintiffs business produced in Mauritius at the fair market rate and was to wholly support plaintiffs company in Mauritius; and (g) defendant was to pay all moving and resettling costs of plaintiff. The petition then alleges that (i) plaintiff carried out his agreement and formed two companies, Le Baron and Le Sega, to produce, manufacture, and sell ties; (ii) defendant has refused to pay plaintiff anything more than $9,300, the bulk of which was received in 1978; and (iii) plaintiff is due $219,000 (plus costs and interest), "including loans the Plaintiff was forced to procure to keep the company in operation as a result of the Defendant’s failure to purchase the output of the Plaintiff and to support the company.”
Defendant has moved to dismiss the petition, mainly on the authority of Totten v. United States, 92 U.S. 105 (1875). *725 In that more-than-a-century-old decision coming from this court, the Supreme Court assumed that the plaintiffs decedent had a contract with President Lincoln (made in July 1861) by which the decedent "was to proceed South and ascertain the number of troops stationed at different points in the insurrectionary States, procure plans of forts and fortifications, and gain such other information as might be beneficial to the government of the United States, and to report the facts to the President; for which services he was to be paid $200 a month.” It was also assumed that in fact the decedent was only reimbursed his expenses. The Supreme Court had no difficulty with the President’s authority to make such a contract, but it held that nevertheless the claimant could not enforce the contract in the Court of Claims. "The service stipulated by the contract was a secret service; the information sought was to be obtained clandestinely, and was to be communicated privately; the employment and the service were to be equally concealed. Both employer and agent must have understood that the lips of the other were to be for ever sealed respecting the relation of either to the matter.- This condition of the engagement was implied from the nature of the employment, and is implied in all secret employments of the government in time of war, or upon matters affecting our foreign relations, where a disclosure of the service might compromise or embarrass our government in its public duties, or endanger the person or injure the character of the agent. If upon contracts of such a nature an action against the government could be maintained in the Court of Claims, whenever an agent should deem himself entitled to greater or different compensation than that awarded to him, the whole service in any case, and the manner of its discharge, with the details of dealings with individuals and officers, might be exposed to the serious detriment of the public. * * * The secrecy which such contracts impose precludes any action for their enforcement. * 15 *.” 92 U.S. at 106-07.
Defendant says that plaintiffs case falls squarely under Totten, that inquiry into the case would necessarily involve the precise nature of the alleged contractual understandings between the parties, including the parties’ alleged *726 responsibilities under the contract, a detailed description of the duties plaintiff may have actually performed, and a description of any action defendant may have taken pursuant to the contract. It is also said that plaintiff "would have to detail any dealings he may have had with particular officers of the CIA with respect to the formation of the alleged contract and the performance of duties pursuant to the contract, even though many of those CIA employees might work under cover.”
Plaintiffs response is that Totten involved a direct spy, while plaintiff acted more as an administrative employee of the CIA, sent to set up a business, run the intelligence gatherers through his business as a front operation, and manufacture ties to be sent back to the United States and sold by the domestic corporations. We are told that plaintiff s information gathering role was insignificant compared to his administrative functions as a corporate businessman; and that his suit is for acting as a corporate businessman, setting up two corporations, providing employment roles and meeting places, and providing day-to-day information on the political climate in Mauritius. We are also told that very little of a secret nature is left in the case, and what there is can be disclosed in camera in the court’s discretion.
On what we now have before us, we have to say the plaintiff s case falls under Totten. This is not a suit between private parties. The contract, if there was one, was with the United States; according to plaintiff he was to engage significantly in undercover intelligence work for the Government; his alleged dealings seem to have been oral and very probably with CIA operatives not otherwise known to the public. We doubt very much that plaintiff could make his case, or the defendant put up its defense, without revealing secret matters which should not be disclosed. In the words of Totten, both plaintiff and the Government "must have understood that the lips of the other were to be for ever sealed respecting the relation of either to the matter. This condition of the engagement was implied from the nature of the employment * * 92 U.S. at 106. The agents in such a secret service "must look for their compensation to the contingent fund of the department employing them, and to such allowances from it as those *727 who dispense that fund may award. The secrecy which those contracts impose precludes any action for their enforcement.” 92 U.S. at 107. Those holdings all seem to apply here. They have been summarily reaffirmed in United States v. Reynolds, 345 U.S. 1, 11 n.26 (1953).
it is therefore ordered, without oral argument, that defendant’s motion to dismiss is granted and the petition is dismissed.